IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| ROOSEVELT ARON III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-109-A |
| | § | |
| FNU M. GREEN, ET AL., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION and ORDER

Now before the court is the above-captioned action wherein Roosevelt Aron III is plaintiff and defendants are FNU M. Green ("Green"); FNU Lovato ("Lovato"); FNU Gutierrez ("Gutierrez"); FNU Lovings ("Lovings"); FNU Ragan ("Ragan"); Rodney Chandler ("Chandler"); FNU McKinney ("McKinney"); FNU Bengford ("Bengford"); and J.A. Keller ("Keller").

### I.

### The Complaint

Plaintiff alleged the following in his complaint:

Plaintiff is a federal prisoner, who was incarcerated at FCI-Fort Worth at the time he initiated this action.[1] Plaintiff and Green, a correctional officer, have had multiple

---

[1] Plaintiff has since informed the court that he has been transferred to a federal prison in Louisiana.

conversations about Islam, plaintiff's religion, and Muslims in the world. Green told plaintiff that Green believed plaintiff should not be a Muslim. Plaintiff considered this opinion as an "intrusion on my beliefs and disrespectful to those beliefs." Compl. at 3.

At some point following this conversation, plaintiff inquired at the officer's station about why his locker was removed.[2] At that time, Lovato, a lieutenant, was making rounds, and plaintiff "informed him about the repeated harassment" from Green. Id. Plaintiff told Lovato and Green that Green had "repeatedly harassed him and searched him excessively," to the point that Green searched plaintiff's locker any time he worked on the unit. Id. Lovato then asked plaintiff to open his locker, and when plaintiff complied, "all his property came falling out and was clearly damaged." Id. Plaintiff's locker was "bent and damaged beyond repair." Id. at 4. Plaintiff identified several items that were damaged, including books, religious prayer oils, toiletries, photographs, and other personal items. Plaintiff informed Green that some of his property was destroyed, and Green stated he would not pay for the property. Plaintiff began the process of exhausting

---

[2] The complaint does not explain the circumstances under which plaintiff's locker was removed, including when, why, or by whom it was removed.

administrative remedies, and submitted his BP-8 on December 12, 2012.

On that same day, plaintiff "received more retaliation and harassment" from Green, id., when Green caused plaintiff's family to wait an additional forty to forty-five minutes at visitation while Green "out-processed" or "processed in" several other prisoners. Green delayed plaintiff's visitation, even though Green knew that plaintiff was present, and even though another officer announced that plaintiff had visitors. As a result of Green's retaliation, plaintiff's visitation time with his family was cut short.

Following this incident, plaintiff again informed his unit team, comprised of Gutierrez, Lovings, and Ragan, about the "disrespectful and demeaning behavior" of Green. Id. at 6. Plaintiff completed another form required to exhaust his administrative remedies. It was received by Bureau of Prisons officials on January 14, 2013, and denied by Chandler, Warden of FCI-Fort Worth, on February 5, 2013. No action was taken against Green as a result of his conduct, and plaintiff's unit team failed to act to correct the situation.

Plaintiff contends that the destruction of his personal property, and the "repeated and ongoing retaliation" received from the defendants, have occurred because of his Muslim

3

religion. Id. Green "bragged about his military tours and exploitation of Muslims overseas" to plaintiff before realizing that plaintiff was a Muslim. Id. Plaintiff maintains that defendants violated his religious rights and retaliated against him after plaintiff exercised his First Amendment rights.

Plaintiff asserted the following claims against defendants pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971): violation of his First Amendment right through religious discrimination; violation of his Fourth Amendment right against unreasonable searches; violation of his Eighth Amendment right against harassment and destruction of property; violation of the Religious Freedom Restoration Act ("RFRA"); and, retaliation.

II.

Screening Pursuant to 28 U.S.C. § 1915A

Plaintiff is a federal prisoner. As a prisoner seeking redress from government officials, plaintiff's complaint is subject to preliminary screening under 28 U.S.C. § 1915A, regardless of whether he paid the full filing fee or is proceeding in forma pauperis. Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Section 1915A(b)(1) provides for sua sponte dismissal if the court finds that the complaint is either frivolous or fails to state a claim upon which relief may be granted.

A claim is frivolous if it "lacks an arguable basis in

either fact or law." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief can be granted when, assuming that all the allegations in the complaint are true even if doubtful in fact, such allegations fail to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

After a thorough review of the complaint, the court is satisfied that it should be dismissed as frivolous and for failure to state a claim for relief.

III.

Analysis

A. Defendants Chandler, Gutierrez, Lovings, Ragan, Keller, McKinney, and Bengford

Chandler, Gutierrez, Lovings, Ragan, Keller, McKinney, and Bengford are mentioned in the complaint only in connection with the denial of plaintiff's grievances and attempts to exhaust administrative remedies.[3] No other facts are alleged to show any actionable conduct by any of these defendants towards plaintiff.

Plaintiff has no cause of action against these defendants as the result of their role in denying plaintiff's grievances. The

---

[3] Bengford is mentioned only with regard to a grievance previously filed by plaintiff, which was rejected as being time barred, and which plaintiff admits is not part of the complaint in this action.

5

United States Court of Appeals for the Fifth Circuit has held that inmates have no constitutionally protected interest in having grievances resolved to their satisfaction. See Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) (claim that prison officials failed to investigate grievances is "indisputably meritless" because prisoner has no federally protected interest in having grievances resolved to his satisfaction); see also Mahogany v. Miller, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that plaintiff had no actionable claim under 42 U.S.C. § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances). Denying plaintiff's grievances, or failing to resolve them in the manner preferred by plaintiff, is not a violation of plaintiff's constitutional rights. Accordingly, plaintiff's claims against Chandler, Gutierrez, Lovings, Ragan, Keller, McKinney, and Bengford are dismissed.

B.  Religious Discrimination and RFRA Claims

The RFRA provides that the "Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability'," unless the government can satisfy the compelling-interest test. Gonzales v. O Centro Espirita

<u>Beneficente Uniao do Vegetal</u>, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(a)). The RFRA was intended to strengthen First Amendment protections of the free exercise of religion. <u>Diaz v. Collins</u>, 114 F.3d 69, 71 (5th Cir. 1997). "The threshold inquiry under the RFRA is whether the challenged governmental action substantially burdens the exercise of religion." <u>Id.</u> A government action "substantially burdens" a religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." <u>Adkins v. Kaspar</u>, 393 F.3d 559, 570 (5th Cir. 2004) (interpreting the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. § 2000cc, <u>et. seq.</u>).[4]

Plaintiff's RFRA and religious discrimination claims fail to pass even this threshold inquiry. Nothing in the complaint alleges that defendants have taken any action, or instituted any policy, that in any way burdens plaintiff's exercise of his religion.[5] Nor has plaintiff indicated any way in which he was treated differently from other prisoners because of his religion. Although plaintiff contends that Green's expression of his belief

---

[4]The test for a "substantial burden" is essentially the same under the RLUIPA and its predecessor, the RFRA. <u>Longoria v. Dretke</u>, 507 F.3d 898, 902-03 (5th Cir. 2007) (per curiam).

[5]The only potential burden allegedly imposed on plaintiff's exercise of religion is his contention that Bureau of Prisons staff prohibited him from praying in groups of three, as required by the Muslim religion. However, plaintiff concedes he failed timely to exhaust his administrative remedies as to that issue, and expressly stated the incident was not included as part of the instant complaint.

7

that plaintiff should not be a Muslim was "an intrusion on my beliefs and disrespectful to those beliefs," Compl. at 3, that single statement by Green demonstrates neither religious discrimination, nor any other form of actionable conduct by Green.

C. <u>Fourth Amendment/Unreasonable Search Claim</u>

The Supreme Court has held that prisoners do not abandon constitutional rights that are not inconsistent or incompatible with the fact of imprisonment or the objectives of incarceration. <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984). Nevertheless, imprisonment necessarily carries with it the loss or curtailment of a number of significant rights. <u>Id.</u> at 524. Among those, the Court held that a prisoner has no expectation of privacy in his prison cell, and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." <u>Id.</u> at 526. Accordingly, plaintiff cannot sustain his Fourth Amendment claim of unreasonable searches.

D. <u>Eighth Amendment Violations--Harassment and Destruction of Property</u>

The court has been unable to identify specific acts that constitute the "harassment" of which plaintiff is complaining. Plaintiff alleges in a general way that Green's opinion about plaintiff's Muslim religion was "the beginning of a long line

[of] repeated discrimination and harassment" from Green. Compl. at 3. However, the majority of allegations of harassment in the complaint are generalized and conclusory, and lack any facts in support thereof.

One concrete way in which plaintiff contends Green harassed him was by causing plaintiff to wait an additional forty or forty-five minutes at visitation to see his family. A convicted prisoner "has no constitutional right to visitation privileges." Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999); see also Thorne v. Jones, 765 F.2d 1270, 1273 (5th Cir. 1985). Thus, a delay in visitation fails to state a constitutional violation.

To the extent that plaintiff contends Green's comments about plaintiff's religion constituted harassment, words alone cannot sustain a claim of harassment. "[M]ere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (citation omitted). The complaint does not even describe Green's comments as threatening, only that plaintiff apparently took offense at them. The purported comments are insufficient to state a claim of harassment. Likewise, as described supra, Green's search of plaintiff's locker does not rise to the level of harassing conduct. Because plaintiff has failed to allege anything that could constitute harassment of a

type that violated plaintiff's constitutional rights, this claim is dismissed.

Nor can plaintiff prevail on his claim for loss or destruction of his personal property. Deprivation of a prisoner's property is not actionable if the prisoner has access to a meaningful post-deprivation remedy. Sun v. United States, No. 94-10604, 1995 WL 103351 at *6 (5th Cir. Mar. 1, 1995) (quoting Hudson, 468 U.S. at 533). Plaintiff has available at least two statutory avenues to pursue compensation for his lost or destroyed property.

A prisoner complaining of lost or destroyed property can pursue a claim for his damaged property through the Bureau of Prisons's administrative remedies. See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 n.7 (2008) (stating that 31 U.S.C. § 3723(a)(1) provides an administrative remedy for prisoner's claim of lost property, and noting that the Bureau of Prisons, at that time, "ha[d] settled more than 1,100 such claims in the last three years."); see also Bowens v. United States Dep't of Justice, 415 F. App'x 340, 344 (3rd Cir. 2011) (per curiam) (prisoner seeking damages for lost property has post-deprivation remedy through Bureau of Prisons's administrative remedy program); Williams v. Mestas, 355 F. App'x. 222 (10th Cir. 2009) (same).

10

Additionally, 31 U.S.C. § 3724 authorizes the United States Attorney General to settle a clam for, <u>inter alia</u>, loss of, or damage to, privately owned property "caused by an investigative or law enforcement officer as defined in section 2680(h) of title 28, who is employed by the Department of Justice acting within the scope of employment."[6] Because plaintiff has post-deprivation remedies available to him, he cannot prevail on his claim for destruction of property.

E. <u>Retaliation</u>

In order to establish a claim of retaliation, plaintiff must allege: a specific constitutional right; the defendant's intention to retaliate against him for the exercise of that right; a retaliatory adverse act; and, causation, that is, he must show that the incident would not have occurred but for a retaliatory motive. <u>Morris v. Powell</u>, 449 F.3d 682, 684 (5th Cir. 2006). To show retaliatory intent, the prisoner must "produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). Prisoners' claims of

---

[6]Bureau of Prisons officers are "law enforcement officers" as defined in 28 U.S.C. § 2680(h)). <u>Chapa v. United States Dep't of Justice</u>, 339 F.3d 388, 390 (5th Cir. 2003) (per curiam).

retaliation are regarded with skepticism and are carefully scrutinized by the courts. Id. Claims of retaliation are considered under a de minimus standard, meaning that "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." Morris, 449 F.3d at 686. "Mere conclusory allegations of retaliation are insufficient, and plaintiff must allege more than his personal belief that he has been the victim of retaliation." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam).

It appears that conclusory allegations and a personal belief of retaliation are all that plaintiff has alleged in the instant action, as the court finds nothing in the complaint to support a claim of retaliation. It does not appear that plaintiff has alleged the violation of any constitutional right. Additionally, it appears the only allegedly retaliatory act described in the complaint is the isolated incident where Green delayed plaintiff's visit with his family on visitation day. As discussed supra, plaintiff has no constitutional right to visitation. Berry, 192 F.3d at 508. Hence, such delay does not rise to the level of a constitutional violation. Morris, 449 F.3d at 685.

To sum up, nothing is alleged in the complaint to show

either retaliatory intent or causation.  Such are insufficient to state a claim for retaliation.

IV.

Order

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, Roosevelt Aron III, against defendants, Green, Lovato, Gutierrez, Lovings, Ragan, Chandler, McKinney, Bengford, and Keller, be, and are hereby, dismissed with prejudice.

SIGNED May 12, 2014.

_____
JOHN McBRYDE
United States District Judge